Filed 11/18/24  P. v. Orozco CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082726 |
| v. | (Super. Ct. No. FWV1400057) |
| FRANCISCO OROZCO, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Seth Friedman, and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Francisco Orozco, Jr. appeals the trial court's order denying his Penal Code[1] section 1172.6 (formerly § 1170.95) petition to recall his voluntary manslaughter and attempted voluntary manslaughter convictions and for resentencing. On appeal, defendant contends the trial court improperly denied his petition at the prima facie stage without issuing an order to show cause (OSC). We disagree and affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Factual Background*

On December 31, 2013, Alfredo A. was hosting a New Year's Eve party at his home with several guests in attendance. While Alfredo and his brother-in-law, Robert Sanchez, were standing by an outdoor bonfire pit in the front yard, defendant and his cohorts, Angel Valenciana and David Colomo, appeared at Alfredo's driveway. Alfredo

---

[1] Unless otherwise specified, all future statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6 (Stats. 2022, ch. 58, § 10), without substantive changes to the statute's content. We hereafter cite to section 1172.6 for ease of reference.

[2] The factual background is taken from the preliminary hearing transcript, which was admitted by the People and relied on by the court at the November 29, 2023 hearing.

did not know any of the three men. Defendant and Valenciana approached the men while Colomo stayed by the sidewalk about 50 feet away.

Defendant asked Alfredo, "'Where's Frank?'" referring to Alfredo's other brother-in-law Frank C. Alfredo lied and said Frank was not there. Defendant tried to hand Alfredo a $20 bill and said Frank was supposed to give him "'$20 of shit,'" referring to methamphetamine. Alfredo told defendant to leave. Defendant, however, insisted that Frank was there, and stated Frank's "supposed to give [m]e '$20 worth of shit.'" Alfredo repeated that Frank was not there and told the men to "get the fuck out of there."

As he spoke, Alfredo poked the bonfire with a stick. Defendant asked Alfredo what the stick was for, and Alfredo replied, "[I]t [is] for whatever I want[] to use it for." At that point, Frank exited the house. Sanchez went to him and said, "'[t]hese guys are starting problems with [Alfredo].'" Frank then walked up to defendant and asked him if he was starting problems with his brother. Defendant replied "yes" and tried to put the $20 bill in Frank's hand. Frank then punched defendant, causing defendant to stumble back onto a parked car.

Valenciana, who had been standing about three feet behind defendant, shouted twice, "'Get the heat. Get the heat.'" Defendant pulled out a gun from his waistband and shot Sanchez twice from no more than five feet away. Sanchez immediately fell to the ground. Frank started punching defendant, and defendant shot him four times. While defendant was shooting him, Frank continued to punch defendant. After the fourth shot, Frank and defendant fell to the ground and wrestled.

3

During the brawl between Frank and defendant, the gun fell to the ground. Alfredo and Valenciana both ran toward the gun, but Valenciana got to it first and started to run out of the driveway. Alfredo turned to defendant and started hitting him as he held defendant's hooded jacket. As Valenciana ran away, he looked back and fired the gun twice at Alfredo. Alfredo let go of defendant and took cover while telling everyone else to get inside his house. Defendant, Valenciana, and Colomo fled the scene.

Frank was bleeding and holding his stomach. He stood over Sanchez, who was lying on the ground motionless and covered in blood. Sanchez died at the hospital a few hours later. His cause of death was two gunshot wounds. Frank suffered gunshot wounds to his left arm, upper chest, and abdomen. Frank required emergency surgery and survived.

Colomo testified at the preliminary hearing and identified defendant as the person who shot Sanchez and Frank and codefendant Valenciana as the second shooter. He explained that after the shooting, he, defendant, and Valenciana went back to defendant's house, which was down the street from Alfredo's home where the shooting occurred. Defendant stated he went to buy drugs, the man "socked him," and defendant "popped" him. Valenciana told them he fired into the air to scare the other men away. That night, they saw a photograph of themselves on the news with an alert that they were wanted for questioning about a murder. Defendant and Colomo panicked and fled to Mexico.

Eleven days after the shooting, Colomo was arrested at the Mexican border. When first interviewed by law enforcement, he stated he did not know who was involved

4

in the fight or shooting because it was dark. Later, Colomo told detectives he saw a man punch defendant in the face, and defendant pulled out a gun and fired it.

During the investigation, detectives showed Alfredo a photograph of three suspects. He identified defendant and his two cohorts as the individuals involved in the shooting. Alfredo indicated that only one gun was involved in the shooting, that defendant fired most of the shots, the second person (Valenciana) fired two shots.

Following argument, the magistrate court found clear evidence defendant should be held to answer to the charges. The magistrate court concluded that defendant was the direct shooter or the person who actually shot Sanchez and Frank and that Valenciana was the second shooter who acted under the provocative act doctrine. The court did not find Colomo's testimony credible on some aspects of his testimony, mainly concerning his differing stories when he is caught entering the United States and his description of the shooting.

B. *Procedural Background*

In September 2014, defendant and codefendant Valenciana were charged with the murder of Sanchez (§ 187, subd. (a); count 1), and the attempted murder of Frank (§§ 664/187, subd. (a); count 2). As to both counts, the information alleged only defendant personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). It was also alleged that Valenciana attempted to murder Alfredo A. (§§ 664/187, subd. (a); count 3) and that he personally and intentionally discharged a firearm during the offense (§ 12022.53, subd. (c)).

5

On November 21, 2018, the People amended the information to charge defendant with voluntary manslaughter of Sanchez (§ 192, subd. (a); count 4) and attempted voluntary manslaughter of Frank (§§ 664/192, subd. (a); count 5). As to count 4, it was further alleged that defendant personally used a firearm (§ 12022.5, subd. (a)). Defendant thereafter pled guilty to counts 4 and 5 and admitted the personal use of a firearm allegation. In return, the remaining charges and allegations were dismissed, and defendant was sentenced to a stipulated term of 22 years in state prison.

On July 25, 2022, defendant personally filed a petition for resentencing of his voluntary manslaughter and attempted voluntary manslaughter convictions pursuant to former section 1170.95 (now § 1172.6). The trial court thereafter appointed counsel for defendant.

In its response filed on September 20, 2022, the People conceded defendant made a prima facie case for relief and requested the court order a hearing to show cause within the statutorily period of 60 days pursuant to section 1172.6, subdivision (d)(1). The People explained that because the trial court could not weigh conflicting evidence or make credibility determinations, defendant had met the low threshold showing a prima facie case for relief.

At a hearing on October 14, 2022, defendant's appointed counsel informed the trial court "the People agreed that the prima facie case had been demonstrated, and we're at the OSC stage." Defense counsel requested a continuance, noting he had received the preliminary hearing transcript which was used to form the factual basis for the plea that

6

day.  Defense counsel also waived defendant's presence and stipulated to "the timeliness of the OSC hearing."  The trial court thereafter continued the matter.

At the continued hearing on November 18, 2022, the trial court noted, "we're here for status."  The parties agreed, and defense counsel requested another continuance.  Defense counsel explained, "Judge, with the Court's approval, I would like to reset the matter until December the 16th, and I would like to indicate that I would consider that to be a waiver of the 60-day rule as it relates to the filing of the OSC and hearing the OSC.  The reason for the request is the discovery is fairly voluminous, and that's going to be provided to the defense.  I have received some of the transcripts, but I would like to look at the discovery as well."  After the prosecutor also agreed, the trial court continued the matter "for status."

At the continued status hearing on December 16, 2022, the prosecutor noted, "We're past prima facie.  We submitted to the prima facie . . . unfortunately, it requires an OSC but we are actually still exchanging discovery."  The court asked, "so you would agree—so you've conceded from the People's perspective that an order to show cause is appropriately issued?"  When the prosecutor affirmed, the court asked, "Has that issued?"  Both counsel replied, "Yes."  The court stated, "So now it's a question of when we set a hearing on that order to show cause."  Defense counsel affirmed and asked the court to set a status hearing in January 2023 as the parties were "still working on the discovery."  The trial court continued the matter, explaining:  "So based on the fact that the parties are still exchanging discovery and still researching which theories should be pursued at the

7

hearing on the order to show cause, the Court finds good cause to continue the hearing at least to January 27th."

At the January 27, 2023, continued hearing, defense counsel again requested a continuance. The prosecutor stated, "That's fine with the People, your Honor, if there's an agreement with defense counsel that the OSC would be timely if heard within 60 days of that February 8th." The prosecutor later clarified the date as March 24th. Defense counsel replied, "That's okay with us, your Honor." Defense counsel also informed the court that they had also been trying to transport defendant for the hearing but had been unsuccessful, and asked the court if it could order defendant transported for the hearing. After the parties stipulated to the timeliness of the hearing, the court continued the matter to March 24, noting "[t]he need to transport the defendant for the hearing would certainly be good cause to continue the hearing." The clerk's minute order of the hearing states the hearing as a "Determination of Eligibility for Resentencing . . . ."

At the March 24, 2023, continued hearing, defendant was present. Defense counsel again requested a continuance for a status hearing, explaining the parties were still briefing the issue. The prosecutor agreed, noting "as long as the defendant agrees that his OSC would be timely if heard within 60 days of May 19th . . . ." After defense counsel agreed, the trial court granted the request and continued the matter to May 19. The clerk's minute order of this hearing states the hearing as a "Determination of Eligibility for Resentencing . . . ."

On May 12, 2023, the People filed a motion entitled, "People's points and authorities establishing that the petitioner can still be convicted under valid theories of murder and manslaughter subsequent to the amendments to Penal Code sections 188, 189 and 1172.6." The People argued evidence from the preliminary hearing proved beyond a reasonable doubt that defendant was guilty of murder or manslaughter under a still valid theory. The People noted that they conceded defendant had made a prima facie case for relief and that the court should set an OSC. The People also asserted that they would rely on the preliminary hearing transcript at the "OSC hearing." The People requested the trial court take judicial notice of the preliminary hearing transcript, the plea agreement, minute orders, and other pertinent court documents.

The May 19, 2023, status hearing was again continued at defense counsel's request to allow time to file a response. Defendant waived the timeliness of the OSC hearing, and the court granted the request. The clerk's minute order of this hearing again states the hearing as a "Determination of Eligibility for Resentencing . . . ." The hearing was again continued on July 14, 2023, with the court finding good cause to continue the matter for a status review and defendant waiving the timeliness of the hearing. On October 6, 2023, defense counsel requested a continuance "one more time" to allow time for additional investigation before the hearing. Defendant waived his right to have the hearing that day on October 6. The trial court granted the request, noting it wanted to make sure defendant had "every opportunity to be heard in front of [the court]." The

clerk's minute orders of the July 14 and October 6, 2023, hearings note the hearing as a "Determination of Eligibility for Resentencing . . . ."

Defendant filed a reply brief, arguing he was entitled to relief pursuant to section 1172.6 because he was not the actual killer, had no intent to kill the victims and was not a major participant "in the death or demonstrated a reckless indifference to a death." Defendant later filed a supplemental response, arguing he had not admitted the aggravating factors and the court should strike the firearm use allegation.

The hearing on defendant's petition was held on November 29, 2023. Defendant was present. The prosecutor noted, "Your Honor, as to the OSC hearing, I would submit on the moving papers unless the Court needs to hear argument as to any specific area." The People relied on the preliminary hearing transcript. Defense counsel argued the court could not consider the preliminary hearing transcript because it was hearsay, and also argued the evidence was insufficient to prove beyond a reasonable doubt defendant was the actual shooter because the witness had first identified codefendant Valenciana as the actual shooter. Specifically, defense counsel stated: "I would basically submit on my initial Points and Authorities that were filed and unfortunately attached to a 1050, but I object to the Court exclusively relying upon the preliminary hearing transcript in this matter to deny [defendant]'s petition. [¶] I do realize that the portions that counsel cited are not double hearsay, but I did note and I do note again for the record that the witness appears to have identified Mr. Valenciana, V-a-l-e-n-c-i-a-n-a, as the actual shooter at the preliminary hearing, page 8, line 9. [¶] Now, I realize later on during that examination

10

the witness changed his testimony and also identified my client, but the People have chosen to proceed *at this stage of the proceedings* based upon the preliminary hearing transcript alone. And so they have chosen not to present live testimony, and they're relying on that preliminary hearing transcript. [¶] In my opinion, the issue is whether you can make a finding *beyond a reasonable doubt* based upon that preliminary hearing testimony to deny my client's petition, and we would advocate to you that the hearsay-prelim transcript, when the witness identified someone else in addition to my client in the preliminary hearing transcript, is insufficient to deny his petition *at this stage*." (Italics added.) Upon questioning by the trial court, defense counsel clarified that the court cannot consider the preliminary hearing transcript to deny defendant's petition, and assuming the court could consider it, the preliminary hearing transcript was "insufficient *at this stage of the proceedings* to deny [the] petition." (Italics added.)

The trial court responded, "All right. And I think if it was 115, I think you would be in a much better position than you are. So I do think there's case law that says that I can consider the prelim if it's an actual witness testifying. I could be wrong." The prosecutor responded that the court was correct, and argued the statute and case law permitted the court to consider the preliminary hearing transcript, and that such evidence was admissible and credible. The prosecutor also pointed out that the eyewitness clarified defendant was the shooter and his testimony was corroborated by two other witnesses. The prosecutor specifically stated, "And I would also argue, in response to [defense counsel]'s second point, that not only is it admissible evidence, but it's credible

11

and competent evidence because the witness was clear that he was absolutely certain he was identifying the right person later on if you read the transcript." Defense counsel replied that the court did not "have the opportunity to actually observe these witnesses and determine their credibility" and "without live witnesses, it's insufficient."

Following argument, the trial court noted it considered "all of the briefs filed in this case, the court file, including the preliminary hearing transcript, which [it] read several times, and anything else included in the record of conviction[.]" The court denied defendant's petition, reasoning: "The record of conviction demonstrates the defendant was the shooter in this case, and based on that, the People have proven *beyond a reasonable doubt* that the petitioner would have been guilty of murder or attempted murder – in this case, he pled to voluntary manslaughter – under California law as amended by the changes to [s]ection 188 or 189 made effective January 1st, 2019." (Italics added.) The court added that even if it "did grant the OSC and this case was before [it] for resentencing," it "would not exercise [its] discretion to reduce the sentence based on the facts as" known today. The clerk's minute order of the November 29 hearing states, "Determination of Eligibility for Resentencing Pursuant to [section] 1172.6 is heard." This minute order further asserts, "Defense Determination of Eligibility for Resentencing Pursuant to [section] 1172.6 is DENIED." Defendant timely appealed.

III.

DISCUSSION

Defendant contends the trial court erred in denying his section 1172.6 petition and relying on the preliminary hearing transcript at the prima facie stage without issuing an order to show cause. He requests this court remand the matter for an evidentiary hearing. However, a thorough review of the record reveals that the trial court issued an order to show cause and denied defendant's petition following an evidentiary hearing.

A. *Standard of Review*

We review de novo whether the trial court conducted a proper inquiry as to whether a prima facie case for relief had been established under section 1172.6. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437; *People v. Coley* (2022) 77 Cal.App.5th 539, 545.) "Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""" (*People v. Reyes* (2023) 14 Cal.5th 981, 988; see *People v. Williams* (2020) 57 Cal.App.5th 652, 663.) "We review the interpretation of a statute de novo." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880.)

B. *Legal Background*

Senate Bill No. 1437 limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971.) Senate Bill No. 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder and limits the circumstances under which a person may be convicted of felony murder. (Stats. 2018, ch. 1015, §§ 2, 3.)

Amended section 188, subdivision (a)(3) requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3).) Section 189, subdivision (e), provides: "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in

14

subdivision (d) of [s]ection 190.2."[3] (§ 189, subd. (e); accord, *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.)

Senate Bill No. 1437 also added what is now section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10; see § 1172.6, subd. (a); *People v. Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Strong* (2022) 13 Cal.5th 698, 708.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 to expand those eligible for relief to, among others, persons convicted of voluntary manslaughter or attempted murder based on the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a); see § 1172.6, subd. (a); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891; *People v. Coley*, *supra*, 77 Cal.App.5th at p. 548.) Under section 1172.6, "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, including "[a] declaration by the petitioner that the petitioner is eligible for relief" (§ 1172.6, subd. b)(1)(A), the trial court must appoint counsel, if requested (§ 1172.6, subd. (b)(3)). After service of the petition, the prosecutor shall file and serve a response. The petitioner

---

[3] Additionally, subdivision (f) of section 189 permits felony-murder liability under specified circumstances where the victim is a peace officer.

may file and serve a reply after the response is served. (§ 1172.6, subd. (c).) After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*People v. Strong*, *supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).) If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).) The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a

16

conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

*People v. Davenport* (2023) 95 Cal.App.5th 1150 (*Davenport*) addressed the admissibility of a preliminary hearing transcript at a section 1172.6 evidentiary hearing. The court held a "plain reading" of section 1172.6, subdivision (d)(3) compels the conclusion that a preliminary hearing transcript is generally admissible: "First, the provision unambiguously provides that a trial court ruling on the merits of a resentencing petition 'may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony.' (§ 1172.6, subd. (d)(3).) Second, because of the proviso that the trial court may not consider hearsay testimony that was admitted into evidence at a preliminary hearing under subdivision (b) of section 872, unless some other hearsay exception applies, section 1172.6, subdivision (d)(3) expressly contemplates that preliminary hearing testimony in particular will be considered at an evidentiary hearing." (*Davenport*, *supra*, at p. 1158.) The court determined that section 1172.6, subdivision (d)(3) creates a new hearsay exception for former testimony given at a preliminary hearing, so long as that testimony was not admitted pursuant to section 872, subdivision (b). (*Davenport*, *supra*, at p. 1158.)

17

The *Davenport* court summarized its interpretation of section 1172.6 as follows: "[T]he rules of evidence apply to hearings held under section 1172.6, subdivision (d); under those rules, hearsay is inadmissible in the absence of an exception; and the pertinent exception here is the clause in section 1172.6, subdivision (d)(3), stating that 'except that the court may consider evidence previously admitted at any prior hearing . . . .'" (*Davenport*, *supra*, 95 Cal.App.5th at p. 1158.)

C. *Analysis*

Defendant argues the trial court erred in denying his petition without issuing an order to show cause or holding an evidentiary hearing. Defendant is mistaken. The record is clear that the November 29, 2023, hearing was an evidentiary hearing held pursuant to section 1172.6, subdivision (d)(3) and conducted after an OSC was issued.

As explained above, the People conceded that defendant made a prima facie showing of entitlement to relief and agreed the court should issue an OSC and hold an evidentiary hearing. At the October 14, 2022 hearing, defense counsel acknowledged the People's concession and noted "we're at the OSC stage." Similarly, at the December 16, 2022 hearing, the prosecutor again noted its concession regarding the prima facie stage, both parties affirmed that the court had issued an OSC, and defense counsel affirmed they had yet to schedule the hearing to show cause. In addition, in anticipation of the evidentiary hearing, defense counsel requested several continuances to obtain discovery, as well as the trial court's assistance in transporting defendant to the evidentiary hearing. The record demonstrates that both parties and the trial court understood that they were at

18

the evidentiary hearing phase of defendant's petition. This remained true at all subsequent hearings, during which the defense waived the 60-day time period for holding the evidentiary hearing that is explicitly required by section 1172.6, subdivision (d)(1). Additionally, the People's brief referred to the upcoming hearing as an "OSC hearing," focused on its burden at an evidentiary hearing—proof beyond a reasonable doubt—and made the arguments pertinent for an evidentiary hearing. The record leading up to the November 29, 2023, hearing thus clearly demonstrates the parties were preparing for the evidentiary hearing.

More importantly, the transcript of the November 29, 2023 hearing shows it was an evidentiary hearing held in accordance with section 1172.6, subdivision (d). Defendant was present and represented by counsel, as required by the statute. (See *People v. Basler* (2022) 80 Cal.App.5th 46, 59.) At the start of the hearing, the prosecutor stated, "Your Honor, as to the OSC hearing, I would submit on the moving papers unless the Court needs to hear argument as to any specific area." In addition, defense counsel made several references to the proper standard of review at a section 1172.6 evidentiary hearing following an OSC—proof beyond a reasonable doubt. (See § 1172.6, subd. (d)(3) ["At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt . . . ."].) For example, defense counsel stated, "the issue is whether you can make a finding beyond a reasonable doubt based upon that preliminary hearing testimony to deny my client's petition . . . ." He also argued the People were "merely proceeding upon the

19

theory of express or implied malice, and the preliminary hearing transcript is insufficient to establish that beyond a reasonable doubt." Defense counsel concluded by stating, "So I would object to the Court considering the preliminary hearing transcript to deny his petition. I believe it is insufficient. If the Court considers the preliminary hearing transcript, I would advocate that given the totality of the circumstances, it does not establish that [defendant] was the shooter beyond a reasonable doubt."

Likewise, the prosecutor's argument demonstrates the parties were present in court on November 29, 2023, for the evidentiary hearing following the OSC. The prosecutor noted that under section 1172.6, the court could consider the preliminary hearing transcript since it consisted of the testimony of actual witnesses. This is in accordance with the statute's guidelines for the evidentiary hearing following an order to show cause, which provides that the court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony . . . ." (§ 1172.6, subd. (d)(3).)

Moreover, the court's rationale for denying the petition shows it conducted the analysis for an evidentiary hearing, not a prima facie hearing. The court stated, "The record of conviction demonstrates that the defendant was the shooter in this case, and based on that, the People have proven beyond a reasonable doubt that the petitioner would have been guilty of murder or attempted murder—in this case, he pled to voluntary manslaughter—under California law as amended by the changes to [s]ection 188 or 189 made effective January 1st, 2019." Finally, the court's comment that "even if [it] did

20

grant the OSC and this case was before [it] for resentencing, [it] would not exercise [its] discretion to reduce the sentence based on the facts as [it] know[s] them today" further supports the conclusion that the hearing was an evidentiary hearing held pursuant to subdivision (d)(3) of section 1172.6. Had the court found the People had not met their burden of proof beyond a reasonable doubt, the court would have granted defendant's petition and proceeded to a resentencing hearing. (See § 1172.6, subd. (d)(3) ["If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."].)

In his reply brief, defendant claims the matter should be remanded so the trial court can clarify what type of hearing was held because an examination of the entire record demonstrates ambiguity as to whether the November 29, 2023, hearing was for the purpose of determining defendant's eligibility for relief or his entitlement to relief. In support, defendant relies on six minute orders that indicated "Determination of Eligibility" and defense counsel's argument at the November 29 hearing wherein counsel stated, "at this stage." We find these arguments unavailing.

Although six minute orders indicated the hearings were "determination of eligibility" hearings, the reporter's transcript did not. Neither the trial court nor the parties believed the hearings were eligibility hearings. In the event of a discrepancy between an oral pronouncement and a minute order, the oral pronouncement controls. (See *People v. Morales* (2014) 224 Cal.App.4th 1587, 1594; *People v. Zackery* (2007)

21

147 Cal.App.4th 380, 385.) In other words, inconsistencies between an oral pronouncement and the minute order are presumed clerical and generally are resolved in favor of the oral pronouncement. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Gobert* (2023) 89 Cal.App.5th 676, 689; *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 744.) If the clerk's minutes diverge from the court's or the parties oral statements, any discrepancy is presumed to be a clerical error in the minutes. (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

Furthermore, defense counsel's statement "at this stage" does not support defendant's claim on appeal that the matter should be remanded to resolve an ambiguity. While defense counsel stated "at this stage" thrice at the November 29, 2023, hearing, counsel had repeatedly acknowledged an OSC had been issued and that the matter was set for an evidentiary hearing. Further, counsel noted the standard of proof beyond a reasonable doubt and ensured defendant's presence at the hearing. Defense counsel also requested many continuances in an effort to gather all of the discovery and evidence in this case. We do not believe the matter warrants a remand.

Based on the foregoing, we reject defendant's contention that the trial court denied his section 1172.6 petition at the prima facie stage without issuing an order to show cause. The record clearly shows defendant received the evidentiary hearing under section 1172.6, subdivision (d).

IV.

DISPOSITION

The trial court's postjudgment order denying defendant's section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

MENETREZ

J.